# EXHIBIT 1

**CIRCUIT COURT SUMMONS**  NASHVILLE, TENNESSEE

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20TH JUDICIAL DISTRICT

Service ID 433258

SW NASHVILLE EB OWNER LLC

Plaintiff

vs.

METROPOLITAN GOVERNMENT OF NASHVILLE AND
DAVIDSON COUNTY TENNESSEE
1 PUBLIC SQUARE, SUITE 108
DEPARTMENT OF LAW
NASHVILLE, TN 37201

Defendant

CIVIL ACTION
DOCKET NO. 24C1121
Method of Service:
Personal Service

*[Stamp: 2024 MAY 10 PM METRO DEPT OF LAW / METRO GOVT OF NASHVILLE & DAVIDSON CO]*

To the above named Defendant:

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303, and your defense must be made within thirty (30) days from the date this Summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the Complaint.

ISSUED: 05/07/2024

JOSEPH P. DAY
Circuit Court Clerk
Davidson County, Tennessee

By: *[signature]* C Follett

Deputy Clerk

ADDRESS OF PLAINTIFF'S ATTORNEY OR PLAINTIFF:
W. SCOTT SIMS
3102 WEST END AVENUE, SUITE 1100
NASHVILLE, TN 37203

**NOTICE TO THE DEFENDANT:**

Tennessee law provides a Ten Thousand and 00/100 Dollars ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

 To request an ADA accommodation, please contact Trey Collier at (615) 880-3309

rev. 09/01/2022

Service ID 433258

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20TH JUDICIAL DISTRICT

SW NASHVILLE EB OWNER LLC

Plaintiff

vs.

METROPOLITAN GOVERNMENT OF NASHVILLE AND
DAVIDSON COUNTY TENNESSEE
1 PUBLIC SQUARE, SUITE 108
DEPARTMENT OF LAW
NASHVILLE, TN 37201

Defendant

CIVIL ACTION
DOCKET NO. 24C1121
Method of Service:
Personal Service

### RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that on the _____ day of _____, 20___, I:

_____ served this Summons and Complaint/Petition on _____ in the following manner:

_____ failed to serve this Summons within 90 days after its issuance because _____

_____
Sheriff/Process Server

To request an ADA accommodation, please contact Trey Collier at (615) 880-3309

accepted for Metro Gov. only
[signature]
5-10-24

rev. 09/01/2022



IN THE CIRCUIT COURT OF DAVIDSON COUNTY, TENNESSEE
FOR THE TWENTIETH JUDICIAL DISTRICT AT NASHVILLE

| | |
|---|---|
| SW NASHVILLE EB OWNER, LLC, | ) |
| Plaintiff, | ) |
| v. | ) |
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY TENNESSEE; and LUCY KEMPF, EXECUTIVE DIRECTOR OF THE METROPOLITAN NASHVILLE-DAVIDSON COUNTY PLANNING DEPARTMENT, | ) Case No. _____ ) ) JURY DEMAND ) ) ) ) |
| Defendants. | ) |

## COMPLAINT

For its complaint against the Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") and Lucy Kempf, Executive Director of the Metropolitan Nashville-Davidson County Planning Department ("Kempf") (collectively, "Defendants"), Plaintiff SW Nashville EB Owner, LLC ("Plaintiff") states as follows:

1. Plaintiff brings these inverse condemnation, due process, and equal protection claims against Metro and Kempf.

2. Plaintiff brings these claims because Defendants have (1) taken Plaintiffs' private property without paying just compensation; (2) violated Plaintiff's substantive and procedural due process rights; and (3) subjected Plaintiff to unequal treatment under the law, all in violation of both the Tennessee and United States Constitutions.

1

## THE PARTIES

4. Plaintiff owns the tract of land identified as 186 North 1st Street, Nashville, Tennessee 37213 (Parcel #082140055.00) ("the Property").

5. Defendant Metro is a consolidated city and county government formed by the City of Nashville and Davidson County, Tennessee, and incorporated pursuant to Tenn. Code Ann. §§ 7-1-101 *et seq*.

6. Defendant Kempf oversees development permitting in the Metro area (including for the Property).

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to Tenn. Code Ann. § 29-16-123. *See Hise v. State*, 968 S.W.2d 852, 854 (Tenn. Ct. App. 1997).

8. Venue is proper in Davidson County pursuant to Tenn. Code Ann. § 20-4-107.

## BACKGROUND

9. Plaintiff purchased the Property in 2022 after undertaking extensive due diligence. The Property is located in an "Opportunity Zone"[1] and is zoned "MUG-A," which (1) allows for a mix of residential, retail, and office uses and (2) requires building placement and bulk standards designed to create walkable neighborhoods. *See* Nashville Mun. Code ("Code") § 17.08.020.

10. Beginning in 2022, Plaintiff applied to the Zoning Division of the Metro Codes Department for approval to construct a multi-family residential project on the Property ("the Application"). Multi-family residential development is "permitted by right" in the MUG-A zoning district. *Id.* § 17.08.030.

---

[1] "Opportunity Zones" are areas where tax incentives are provided to encourage real-estate development in low-income communities. *See* https://oz.tnecd.com/advantages/.

11. Plaintiff was informed by Metro that a Planning Commission staff member had put an indefinite "hold" on the Property that prohibited review of the Application.

12. Plaintiff subsequently received an email from Metro that stated:

> In response to your request for building permit submission to the Metropolitan Codes Department, at this time Metro Government is working in partnership with the Tennessee Department of Transportation (TDOT) to assess possible routes for a planned major roadway in the vicinity of your property. Depending on the outcome of that assessment, the Metropolitan Government may need to acquire right of way interests along the selected route and must defer review of building permits on potentially affected properties until the assessment is complete. The Metropolitan Government will be in contact with you as soon as the assessment and planning processes are complete to discuss the findings and next steps.

13. Plaintiff began extraordinary efforts to work with Metro and Planning Commission employees (including defendant Kempf) in hopes of getting the Application moving again. Plaintiff was strung along repeatedly. Plaintiff's efforts culminated in an October 2023 letter to Metro's Chief Development Officer, Bob Mendes, imploring him to help. *See* Exhibit 1 (letter).

14. In November 2023, Plaintiff's representatives met with Mendes at his office. Mendes told them that Metro was still working on the issue and that they should continue being patient.

15. Unfortunately, no good came of Plaintiff's forbearance. Metro's "hold" on the Application has continued to this day, rendering the Property undevelopable and unsellable—i.e., worthless. Plaintiff has incurred millions of dollars in carrying costs with no indication of whether, when, or on what terms it might be able to proceed with developing the Property. Metro refuses to say whether, when, or on what terms it might review Plaintiff's Application.

16. To make matters worse, even if Metro had taken the required steps to enact an "official" moratorium (rather than an unofficial "hold"), it still could not justify enacting one on these facts. Because Plaintiff's proposed multifamily development is "permitted by right" under

3

the current Code, Metro *must* authorize the development if Plaintiff satisfies the Code's development requirements. *See Harrell v. Hamblen Cty. Quarterly Court*, 526 S.W.2d 505, 509 (Tenn. Ct. App. 1975) ("The granting or withholding of a permit is not a matter of arbitrary discretion. If the applicant complies with the requirements of the ordinance, he is entitled to his permit."). Yet as Metro has already admitted, Plaintiff's Application is not being held up because of Code noncompliance or even because of anticipated Code changes; rather, Plaintiff's Application is being held up because "right of way interests" *may* be needed for a "planned major roadway" in the indefinite future. This is unconstitutional. *Cf. Knox Loudon Corp. v. Town of Farragut*, No. E2000-00174-COAR3CV, 2000 WL 775077, at *4 (Tenn. Ct. App. June 16, 2000) (holding that a compensable taking occurs when a city requires a right-of-way dedication as a condition of approving initial development plans that otherwise meet all applicable zoning requirements).

17. A "unit of government may not condition the approval of a land-use permit on the owner's relinquishment of" property rights—for example, right of way—"unless there is a 'nexus' and 'rough proportionality' between the government's demand and the effects of the proposed land use." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 599 (2013). In other words, the government cannot condition a development permit on a right-of-way dedication unless the development itself necessitates the right of way. *See Copeland v. City of Chattanooga Through Bd. of Com'rs*, 866 S.W.2d 565, 568 (Tenn. Ct. App. 1993).

18. Here, the forthcoming "major roadway" is being planned for reasons unrelated to Plaintiff's proposed land use. That being the case, acquiring right of way for the roadway could never justify delaying, denying, or imposing conditions on Plaintiff's Application. *See Koontz*, 570 U.S. at 599; *see also Megladon, Inc. v. Vill. of Pinecrest*, 661 F. Supp. 3d 1214, 1240 (S.D. Fla.

2023) (holding that a landowner stated a viable "unconstitutional-conditions" claim where a municipality refused to review the landowner's building-permit application until the landowner's site plan included a right-of-way dedication).

19. Defendants cannot avoid liability by arguing that their refusal to review Plaintiff's Application is merely temporary: "[a] taking of real property occurs when a governmental defendant . . . destroys, *interrupts, or interferes with* the common and necessary use of real property." *Edwards v. Hallsdale-Powell Util. Dist. Knox Cty.*, 115 S.W.3d 461, 465 (Tenn. 2003) (emphasis added) (internal citation and punctuation omitted). Indeed, even a *properly enacted* administrative moratorium—unlike the "unofficial" hold occurring here—can constitute a compensable taking. *See Durrett Inv. Co., LP v. City of Clarksville*, No. M2012-00807-COA-R3CV, 2013 WL 614411, at *6 (Tenn. Ct. App. Feb. 15, 2013).

20. Defendants' refusal to process and approve Plaintiff's Application is more than just a regulatory taking; it is also a violation of Plaintiff's due-process and equal-protection rights.

- **Substantive Due Process:** "A property interest protectable by substantive due process exists if the local authority has no discretion to decline to issue a permit, license, or other authorization to an applicant who demonstrates compliance with all pre-existing requirements." *Parks Props. v. Maury Cty.*, 70 S.W.3d 735, 746 (Tenn. Ct. App. 2001). More specifically, unlawful delay in "issuing a building permit may violate a developer's substantive due process rights." *Elsmere Park Club Ltd. P'ship v. Town of Elsmere*, 771 F. Supp. 646, 649 (D. Del. 1991) (granting summary judgment to developer where municipality had violated its substantive due process rights by delaying action on the developer's building-permit application).

- **Procedural Due Process:** "[P]rocedural due process requires state and local governments to employ fair procedures when they deprive persons of a constitutionally protected interest in life, liberty, or property." *Parks Props.*, 70 S.W.3d at 743. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Heyne v. Metro. Nashville Bd. of Pub. Educ.*, 380 S.W.3d 715, 732 (Tenn. 2012). Plaintiff has not received a meaningful opportunity to contest the "unofficial hold" on the Property.

5

- **Equal Protection:** The equal-protection clauses of the Tennessee and United States constitutions mandate that similarly situated permit applicants must be treated equally. This means, among other things, that Metro "cannot create new or additional requirements" beyond those in the Code "in the context of a particular request for approval" such as Plaintiff's. *Consol. Waste Sys., LLC v. Metro. Gov't of Nashville & Davidson Cty.*, No. M2002-02582-COA-R3CV, 2005 WL 1541860, at *35 (Tenn. Ct. App. June 30, 2005).

## CAUSES OF ACTION

### Count I: Inverse Condemnation

21. The preceding paragraphs are incorporated herein by reference.

22. Article 1, section 21 of the Tennessee Constitution mandates that private property shall not be taken without just compensation. The Fifth Amendment to the United States Constitution mandates the same.

23. In *Phillips v. Montgomery Cty.*, 442 S.W.3d 233, 244 (Tenn. 2014), the Tennessee Supreme Court held that "article I, section 21 of the Tennessee Constitution encompasses regulatory takings to the same extent as the Takings Clause of the Fifth Amendment to the United States Constitution."

24. By denying all economically beneficial use of the Property, rendering it worthless, Metro has effectively taken the Property. It must therefore pay just compensation.

25. Pursuant to 42 U.S.C. § 1983 and Tenn. Code Ann. § 29–16–123, Plaintiff is entitled to recover just compensation for Metro's taking of the Property.

26. Further, pursuant to 42 U.S.C. § 1988 and Tenn. Code Ann. § 29–16–123, Plaintiff is entitled to recover the costs and expenses (including attorneys' fees) it has incurred in pursuing this action.

## Count II: Substantive Due Process

27. The preceding paragraphs are incorporated herein by reference.

28. Article 1, section 8 of the Tennessee Constitution prohibits deprivation of property without due process of law. The Fourteenth Amendment to the United States Constitution prohibits the same.

29. By refusing to timely grant Plaintiff's Application in accordance with the Code, Defendants have violated Plaintiff's substantive due process rights.

30. Pursuant to Article 1, section 8 of the Tennessee Constitution and 42 U.S.C. § 1983, Plaintiff is entitled to recover the damages caused by this violation.

31. Further, pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover the costs and expenses (including attorneys' fees) it has incurred in pursuing this action.

## Count III: Procedural Due Process

32. The preceding paragraphs are incorporated herein by reference.

33. Article 1, section 8 of the Tennessee Constitution prohibits deprivation of property without due process of law. The Fourteenth Amendment to the United States Constitution prohibits the same.

34. By refusing to process Plaintiff's Application in accordance with the Code, Defendants have violated Plaintiff's procedural due process rights.

35. Pursuant to Article 1, section 8 of the Tennessee Constitution and 42 U.S.C. § 1983, Plaintiff is entitled to recover the damages caused by this violation.

36. Further, pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover the costs and expenses (including attorneys' fees) it has incurred in pursuing this action.

## Count IV: Equal Protection

37. The preceding paragraphs are incorporated herein by reference.

38. Article 1, section 8 of the Tennessee Constitution prohibits unequal treatment under the law. The Fourteenth Amendment to the United States Constitution prohibits the same.

39. By treating Plaintiff differently from other applicants for building permits, Defendants have violated Plaintiff's right to equal protection under the law.

40. Pursuant to Article 1, section 8 of the Tennessee Constitution and 42 U.S.C. § 1983, Plaintiff is entitled to recover the damages caused by this violation.

41. Further, pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover the costs and expenses (including attorneys' fees) it has incurred in pursuing this action.

## PRAYER FOR RELIEF

42. For the foregoing reasons, Plaintiff prays for the following relief:

A. Judgment against Metro for just compensation in an amount to be proved at trial;

B. Judgment against Defendants for damages in an amount to be proved at trial;

C. Judgment against Defendants for Plaintiff's costs and expenses, including attorneys' fees, incurred in bringing this action;

D. Pre- and post-judgment interest on all compensation and damages awarded Plaintiff;

E. All other and further relief, in law or at equity, to which Plaintiff may be entitled; and

F. Trial by jury on all issues so triable.

Respectfully submitted,

/s/ W. Scott Sims
W. Scott Sims (#017563)
R. Mark Donnell, Jr. (#030136)
SIMS|FUNK, PLC
3102 West End Ave., Suite 1100
Nashville, TN 37203
(615) 292-9335
ssims@simsfunk.com
mdonnell@simsfunk.com

*Attorneys for Plaintiff*

# Exhibit 1

EFILED 05/06/24 08:45 AM CASE NO. 24C1121 Joseph P. Day, Clerk



October 13, 2023

<u>Via Email to:</u> <u>bob.mendes@nashville.gov</u>

Metropolitan Nashville-Davidson County Mayor's Office
ATTN: Bob Mendes, Chief Development Officer
Historic Metro Courthouse
Suite 100, Mayor's Office
Nashville, TN 37201

      **RE:**  **East Bank Boulevard**

Dear Mr. Mendes:

  Congratulations on the new appointment. I am enthused that so early on in his tenure Mayor O'Connell recognized the need for dedicated, high-level oversight and ownership for the Metro Nashville redevelopment process on the East Bank, and brought both you and Sam Wilcox on board.

  As such, I am writing to request an in-person meeting with you of urgent importance. As you know, Stillwater Capital and our equity partner, Pinnacle Partners, are the owners of the 186 N 1st Street parcel that we purchased in March of 2021 with the intent of developing a multi-family Opportunity Zone project by-right under the existing MUG-A zoning. We filed for a grading permit in April of 2022 and a final site plan approval on June 2, 2022, to which we received an official response from Metro that a "hold" was placed on our application because Metro Government *may* need to acquire right of way interests along potentially affected properties. Our attorney, Sean Henry of Tune, Entrekin, and White submitted a formal objection to the Planning Department and Metro Legal on July 26, 2022 stating that a de facto moratorium on development by the Planning Department is illegal. And we never received a response. I have included this letter for reference.

  Since July of 2020 (8 months prior to acquiring our site), we have made every effort to work with Metro Planning in trying to coordinate and accommodate the potential East Bank Boulevard through our site. We altered our site plan significantly in early 2021 based on Planning's feedback of the intended boulevard route. Then, in early April 2022, we were informed the conceptual routing had changed, and it was now coming directly *through* the middle of our site. We *again* pivoted and worked to evaluate a concept that could be built under this scenario, only to continue receive updates and projected timelines that never held true. We have waited patiently for Metro to engage us in the eminent domain proceedings, while they have held by-right development for us and others in limbo since late 2021. We schedule routine calls and meetings with NDOT and Planning, and their engineers, and continually get vagaries, excuses, tentative timelines and updates that are not met or simply prove false. We were told in the summer of 2022 they hoped to start the Early ROW Acquisition Process in early fall of 2022. We were again told in May of this year (almost one year later) that the Early ROW Acquisition Process would commence in late July. It is now October and Metro and TDOT have yet to engage an appraiser. Metro Planning says the still intend on filing for permits for the road in Q12024, yet they cannot answer basic stormwater/elevation questions or tell us what is happening on the adjacent streets they show on their plan. Perhaps most importantly above all else, we have no certainty when or if a project of this magnitude will get funded, and get vague answers when we ask.

  Shockingly, we *still* do not know when these will be met. All the while, the delays are costing us and our opportunity zone investors *millions*. As a result, we are left owning a parcel of land that is

EFILED 05/06/24 08:45 AM CASE NO. 24C1121 Joseph P. Day, Clerk

undevelopable *and* unsellable due to the lack of clarity and certainty on what is going to happen on and around our site, how much we will compensated, and when, if ever, this all will occur.

Frankly, we are left with the feeling that Nashville is not a business-friendly environment as we had thought. Pinnacle and its investors are excited to be part of a much-needed multifamily project in an Opportunity Zone that Nashville and the state were so insightful to get qualified for OZ development. However, Pinnacle is very concerned that its investors funds may not meet the opportunity zone regulations to put this capital to work in the required timelines, therefore Stillwater is in jeopardy of losing Pinnacle as the capital partner in this project.

We are still intent on developing a wonderful project on our parcel that has the potential to help complement the new boulevard infrastructure very quickly for the city. It remains our goal to develop this project concurrently with the Boulevard deliver. However, we cannot continue to wait while receiving no clarity from Metro. The position we are now in is: 1) we don't know if a project is financially viable since we don't know what our land basis will be, 2) we don't have any idea of when we will know and Metro cannot tell us, and 3) even if we solve for (1) and (2), we don't know how we can build a building in that location if we there isn't certainty on when and if there will be a major road in front of it or not.

All of that said, the point of the requested meeting is to discuss how and when Metro will be held accountable to an actionable timeline, given all of the above. This situation is completely untenable, yet our only recourse is to sue the City of Nashville, which hinders both of our and Metro's objectives of completing our respective projects in a timely manner and creating a symbiotic benefit to each in doing so. So, it is our hope in meeting with you, as you have just now stepped into this role, that there is finally oversight on Metro's end that cares about how Metro Nashville treats those investing hundreds of millions of dollars in its city to help come up with a solution.

Respectfully,

Jake Fortune-Greeley
Partner, Stillwater Capital

Cc:
Sam Wilcox
Leo Backer
Jill Homan