**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| **SW NASHVILLE EB OWNER, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY TENNESSEE; and LUCY KEMPF, EXECUTIVE DIRECTOR OF THE METROPOLITAN NASHVILLE-DAVIDSON COUNTY PLANNING DEPARTMENT,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 3:24-cv-710**<br><br>**Judge Aleta A. Trauger**<br><br>**JURY DEMAND** |

# SECOND AMENDED COMPLAINT

For its complaint against the Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") and Lucy Kempf, Executive Director of the Metropolitan Nashville-Davidson County Planning Department ("Kempf") (collectively, "Defendants"), Plaintiff SW Nashville EB Owner, LLC ("Plaintiff") states as follows:

1. Plaintiff brings these inverse condemnation, due process, and equal protection claims against Defendants.

2. Plaintiff brings these claims because Defendants have (1) taken Plaintiffs' private property without paying just compensation; (2) violated Plaintiff's substantive and procedural due process rights; and (3) subjected Plaintiff to unequal treatment under the law, all in violation of both the Tennessee and United States Constitutions.

3. Plaintiff is filing this Second Amended Complaint to clarify that (1) its inverse condemnation claim sounds against Metro only and (2) its substantive due process, procedural due process, and equal protection claims against Kempf sound under the United States Constitution only (not under the Tennessee Constitution as well). In all other respects, this Second Amended Complaint is identical to Plaintiff's First Amended Complaint.

**THE PARTIES**

4. Plaintiff owns the tract of land identified as 186 North 1st Street, Nashville, Tennessee 37213 (Parcel #082140055.00) ("the Property").

5. Defendant Metro is a consolidated city and county government formed by the City of Nashville and Davidson County, Tennessee, and incorporated pursuant to Tenn. Code Ann. §§ 7-1-101 *et seq*.

6. Defendant Kempf oversees development permitting in the Metro area (including for the Property). She is being sued in both her official and individual capacities.

**JURISDICTION AND VENUE**

7. Plaintiff originally filed this suit on May 3, 2024, in Davidson County circuit court, which had subject matter jurisdiction pursuant to Tenn. Code Ann. § 29-16-123. *See Hise v. State*, 968 S.W.2d 852, 854 (Tenn. Ct. App. 1997). Venue was proper in Davidson County pursuant to Tenn. Code Ann. § 20-4-107.

8. Defendants removed the suit to federal court, alleging that this Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

**BACKGROUND**

9. Plaintiff purchased the Property in 2022 after undertaking extensive due diligence.


Case 3:24-cv-00710 Document 44 Filed 10/22/24 Page 2 of 12 PageID #: 258

10. At the time of Plaintiff's acquisition, there was one vacant, dilapidated, and uninhabitable building on the Property. That remains the case today, as a result of Defendants' refusal to issue a building permit to Plaintiff, as described below.

11. Plaintiff acquired the Property with the intention of constructing a multi-family residential project (the "Project") on it. Plaintiff raised significant funds from lenders and investors for this purpose and incurs significant carrying costs in connection with the Property, in the amount of approximately $200,000 per month, exclusive of real property taxes and lost revenue resulting from Defendants' delay.

12. The Property is located in an "Opportunity Zone"[1] and is zoned "MUG-A," which (1) allows for a mix of residential, retail, and office uses and (2) requires building placement and bulk standards designed to create walkable neighborhoods. *See* Nashville Mun. Code ("Code") § 17.08.020.

13. Beginning in 2022, Plaintiff applied to the Zoning Division of the Metro Codes Department for approval to construct the Project on the Property ("the Application"). Multi-family residential development is "permitted by right" in the MUG-A zoning district. *Id.* § 17.08.030.

14. Because Plaintiff's intended development was permitted by right, Plaintiff expected to obtain a development permit within a reasonable period of time in accordance with the procedures outlined in the Code. Plaintiff had no reason to suspect that Defendants might impose delays on the Project for reasons that are not authorized by the Code.

15. Based on how Defendants' permitting process normally works—and is supposed to work under the Code—Plaintiff expected to begin construction on the Project within 12 months of

[1] "Opportunity Zones" are areas where tax incentives are provided to encourage real-estate development in low-income communities. *See* https://oz.tnecd.com/advantages/.

submitting the Application, with an estimated completion date of approximately July 2025, such that the Property would begin generating revenue and returns on investment at that time.

16. After Plaintiff undertook the development-permitting process, however, Plaintiff was informed by Defendants that a Planning Commission staff member had put an indefinite "hold" on the Property that prohibited review of the Application.

17. Plaintiff subsequently received an email from Defendants that stated:

> In response to your request for building permit submission to the Metropolitan Codes Department, at this time Metro Government is working in partnership with the Tennessee Department of Transportation (TDOT) to assess possible routes for a planned major roadway in the vicinity of your property. Depending on the outcome of that assessment, the Metropolitan Government may need to acquire right of way interests along the selected route and must defer review of building permits on potentially affected properties until the assessment is complete. The Metropolitan Government will be in contact with you as soon as the assessment and planning processes are complete to discuss the findings and next steps.

18. Plaintiff began extraordinary efforts to work with Metro and Planning Commission employees (including defendant Kempf) in hopes of getting the Application moving again. Plaintiff was strung along repeatedly. Despite the clear, nondiscretionary standards that should have applied to Plaintiff's by-right Application and resulted in its timely approval, Defendants continued to delay review of the Application while inducing Plaintiff not to act. Defendants repeatedly asked Plaintiff to "be patient" and assured Plaintiff that Defendants would act imminently, then broke those assurances.

19. Plaintiff's efforts to get Defendants to follow the Code-mandated permitting process culminated in an October 2023 letter to Metro's Chief Development Officer, Bob Mendes, imploring him to help. *See* Exhibit 1 (letter).

20. In November 2023, Plaintiff's representatives met with Mendes at his office. Mendes told them that Metro was still working on the issue and that they should continue being patient.

21. Unfortunately, no good came of Plaintiff's forbearance. Metro's "hold" on the Application has continued to this day, rendering the Property undevelopable and unsellable—i.e., worthless—for the duration of the "hold."

22. Plaintiff has incurred millions of dollars in carrying costs with no indication of whether, when, or on what terms it might be able to proceed with developing the Property. Metro refuses to say whether, when, or on what terms it might review Plaintiff's Application.

23. To make matters worse, even if Metro had taken the required steps to enact an "official" moratorium (rather than an unofficial "hold") on Plaintiff's Application, it still could not justify enacting one on these facts. Because Plaintiff's proposed multifamily development is "permitted by right" under the current Code, Metro *must* authorize the development if Plaintiff satisfies the Code's development requirements. *See Harrell v. Hamblen Cty. Quarterly Court*, 526 S.W.2d 505, 509 (Tenn. Ct. App. 1975) ("The granting or withholding of a permit is not a matter of arbitrary discretion. If the applicant complies with the requirements of the ordinance, he is entitled to his permit."). Yet as Metro has already admitted, Plaintiff's Application has not been held up because of Code noncompliance or even because of anticipated Code changes; rather, Plaintiff's Application has been held up because "right of way interests" *may* be needed for a "planned major roadway" in the indefinite future. This is unconstitutional. *Cf. Knox Loudon Corp. v. Town of Farragut*, No. E2000-00174-COAR3CV, 2000 WL 775077, at *4 (Tenn. Ct. App. June 16, 2000) (holding that a compensable taking occurs when a city requires a right-of-way dedication

as a condition of approving initial development plans that otherwise meet all applicable zoning requirements).

24. A "unit of government may not condition the approval of a land-use permit on the owner's relinquishment of" property rights—for example, right of way—"unless there is a 'nexus' and 'rough proportionality' between the government's demand and the effects of the proposed land use." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 599 (2013). In other words, the government cannot condition a development permit on a right-of-way dedication unless the development itself necessitates the right of way. *See Copeland v. City of Chattanooga Through Bd. of Com'rs*, 866 S.W.2d 565, 568 (Tenn. Ct. App. 1993).

25. Here, the forthcoming "major roadway" is being planned for reasons unrelated to Plaintiff's proposed land use. That being the case, acquiring right of way for the roadway could never justify delaying, denying, or imposing conditions on Plaintiff's Application. *See Koontz*, 570 U.S. at 599; *see also Megladon, Inc. v. Vill. of Pinecrest*, 661 F. Supp. 3d 1214, 1240 (S.D. Fla. 2023) (holding that a landowner stated a viable "unconstitutional-conditions" claim where a municipality refused to review the landowner's building-permit application until the landowner's site plan included a right-of-way dedication). Defendants' actions clearly violate the Code-mandated procedures they were required to follow (and that Plaintiff had every right to expect them to follow).

26. Defendants cannot avoid liability by arguing that their refusal to review Plaintiff's Application is merely temporary: "[a] taking of real property occurs when a governmental defendant . . . destroys, *interrupts, or interferes with* the common and necessary use of real property." *Edwards v. Hallsdale-Powell Util. Dist. Knox Cty.*, 115 S.W.3d 461, 465 (Tenn. 2003) (emphasis added) (internal citation and punctuation omitted). Indeed, even a *properly enacted*

administrative moratorium—unlike the "unofficial" hold occurring here—can constitute a compensable taking. *See Durrett Inv. Co., LP v. City of Clarksville*, No. M2012-00807-COA-R3CV, 2013 WL 614411, at *6 (Tenn. Ct. App. Feb. 15, 2013).

27. Defendants' refusal to act on Plaintiff's Application has prevented Plaintiff from undertaking any construction or development of any kind, rendering the entirety of Plaintiff's Property worthless for the duration of the "hold."

28. Moreover, Defendants' wrongful conduct was not a single act or decision; rather, in response to Plaintiff's regular communications requesting action or information, Defendants continually refused to act while inducing Plaintiff to forbear from taking any legal action of its own.

29. Defendants' extraordinary delay and continuing refusal to act on Plaintiff's Application resulted in new damages to Plaintiff for each and every day the "hold" has persisted.

30. Making matters worse, because Defendants provided no guidance on what portion of Plaintiff's Property might ultimately be impacted by the roadway, Plaintiff was unable to make alternative plans for development of the Property in the interim.

31. By letter dated April 1, 2024, Defendants provided Plaintiff a notice of proposed acquisition of a portion of the Property for purposes of the planned roadway, presumably in advance of eminent domain proceedings and a monetary offer.

32. While Defendants' appraisers have visited and inspected the Property, Plaintiff has still not received an appraisal or purchase offer from Metro, and no eminent domain proceedings have been initiated.

33. Defendants' refusal to process and approve Plaintiff's Application is more than just a taking; it is also a violation of Plaintiff's due-process and equal-protection rights.

- **Substantive Due Process:** "A property interest protectable by substantive due process exists if the local authority has no discretion to decline to issue a permit, license, or other authorization to an applicant who demonstrates compliance with all pre-existing requirements." *Parks Props. v. Maury Cty.*, 70 S.W.3d 735, 746 (Tenn. Ct. App. 2001). More specifically, unlawful delay in "issuing a building permit may violate a developer's substantive due process rights." *Elsmere Park Club Ltd. P'ship v. Town of Elsmere*, 771 F. Supp. 646, 649 (D. Del. 1991) (granting summary judgment to developer where municipality had violated its substantive due process rights by delaying action on the developer's building-permit application).

- **Procedural Due Process:** "[P]rocedural due process requires state and local governments to employ fair procedures when they deprive persons of a constitutionally protected interest in life, liberty, or property." *Parks Props.*, 70 S.W.3d at 743. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Heyne v. Metro. Nashville Bd. of Pub. Educ.*, 380 S.W.3d 715, 732 (Tenn. 2012). Plaintiff has not received a meaningful opportunity to contest the "unofficial hold" on the Property.

- **Equal Protection:** The equal-protection clauses of the Tennessee and United States constitutions mandate that similarly situated permit applicants must be treated equally. This means, among other things, that Metro "cannot create new or additional requirements" beyond those in the Code "in the context of a particular request for approval" such as Plaintiff's. *Consol. Waste Sys., LLC v. Metro. Gov't of Nashville & Davidson Cty.*, No. M2002-02582-COA-R3CV, 2005 WL 1541860, at *35 (Tenn. Ct. App. June 30, 2005).

## CAUSES OF ACTION

### Count I: Inverse Condemnation (Against Metro Only)

34. The preceding paragraphs are incorporated herein by reference.

35. Article 1, section 21 of the Tennessee Constitution mandates that private property shall not be taken without just compensation. The Fifth Amendment to the United States Constitution mandates the same.

36. In *Phillips v. Montgomery County*, 442 S.W.3d 233, 244 (Tenn. 2014), the Tennessee Supreme Court held that "article I, section 21 of the Tennessee Constitution encompasses regulatory takings to the same extent as the Takings Clause of the Fifth Amendment to the United States Constitution."

37. By denying all economically beneficial use of the Property, rendering it worthless for the duration of the permit "hold" and the entirety of Plaintiff's period of ownership to date, Metro has effectively taken the Property. It must therefore pay just compensation.

38. Pursuant to 42 U.S.C. § 1983 and Tenn. Code Ann. § 29–16–123, Plaintiff is entitled to recover just compensation for Metro's taking of the Property.

39. Further, pursuant to 42 U.S.C. § 1988 and Tenn. Code Ann. § 29–16–123, Plaintiff is entitled to recover the costs and expenses (including attorneys' fees) it has incurred in pursuing this action.

**Count II: Substantive Due Process**

40. The preceding paragraphs are incorporated herein by reference.

41. Article 1, section 8 of the Tennessee Constitution prohibits deprivation of property without due process of law. The Fourteenth Amendment to the United States Constitution prohibits the same.

42. There is no basis in law for Defendants' delay and refusal to act on Plaintiff's Application. By refusing to timely grant Plaintiff's Application in accordance with the Code, Defendants have violated Plaintiff's substantive due process rights.

43. Pursuant to Article 1, section 8 of the Tennessee Constitution and 42 U.S.C. § 1983, Plaintiff is entitled to recover the damages caused by this violation.

44. Further, pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover the costs and expenses (including attorneys' fees) it has incurred in pursuing this action.

45. Plaintiff brings its substantive due process claim against Metro under both the Tennessee and United States constitutions. Plaintiff brings its substantive due process claim against Kempf under the United States Constitution only.

## Count III: Procedural Due Process

46. The preceding paragraphs are incorporated herein by reference.

47. Article 1, section 8 of the Tennessee Constitution prohibits deprivation of property without due process of law. The Fourteenth Amendment to the United States Constitution prohibits the same.

48. By refusing to process Plaintiff's Application in accordance with the Code, Defendants have violated Plaintiff's procedural due process rights.

49. Pursuant to Article 1, section 8 of the Tennessee Constitution and 42 U.S.C. § 1983, Plaintiff is entitled to recover the damages caused by this violation.

50. Further, pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover the costs and expenses (including attorneys' fees) it has incurred in pursuing this action.

51. Plaintiff brings its procedural due process claim against Metro under both the Tennessee and United States constitutions. Plaintiff brings its procedural due process claim against Kempf under the United States Constitution only.

## Count IV: Equal Protection

52. The preceding paragraphs are incorporated herein by reference.

53. Article 1, section 8 of the Tennessee Constitution prohibits unequal treatment under the law. The Fourteenth Amendment to the United States Constitution prohibits the same.

54. Defendants have treated Plaintiff differently from other applicants for building permits, including other applicants owning property in Davidson County zoned for multi-family residential development. On information and belief, during the relevant time period, Defendants have timely reviewed and granted other applicants' development applications in the same manner that they *should have* reviewed and granted Plaintiff's. By singling out Plaintiff for worse treatment

without a legitimate legal basis, Defendants have violated Plaintiff's right to equal protection under the law.

55. Pursuant to Article 1, section 8 of the Tennessee Constitution and 42 U.S.C. § 1983, Plaintiff is entitled to recover the damages caused by this violation.

56. Further, pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover the costs and expenses (including attorneys' fees) it has incurred in pursuing this action.

57. Plaintiff brings its equal protection claim against Metro under both the Tennessee and United States constitutions. Plaintiff brings its equal protection claim against Kempf under the United States Constitution only.

**PRAYER FOR RELIEF**

58. For the foregoing reasons, Plaintiff prays for the following relief:

A. Judgment against Metro for just compensation in an amount to be proved at trial;

B. Judgment against Defendants for damages in an amount to be proved at trial;

C. Judgment against Defendants for Plaintiff's costs and expenses, including attorneys' fees, incurred in bringing this action;

D. Pre- and post-judgment interest on all compensation and damages awarded Plaintiff;

E. All other and further relief, in law or at equity, to which Plaintiff may be entitled; and

F. Trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Zev Kusin*
W. Scott Sims (#017563)
R. Mark Donnell, Jr. (#030136)
SIMS|FUNK, PLC
3102 West End Ave., Suite 1100
Nashville, TN 37203
(615) 292-9335
ssims@simsfunk.com
mdonnell@simsfunk.com

Luke J. Ellis, *pro hac vice*
Zev Kusin, *pro hac vice*
MARRS ELLIS & HODGE LLP
809 West 12th Street
Austin, Texas 78701
lellis@mehlaw.com
zkusin@mehlaw.com

*Attorneys for Plaintiff*