**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Kelly L. Stephens
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: August 14, 2026

Ms. Allison L. Bussell
The Metropolitan Government of Nashville & Davidson County
Department of Law
P.O. Box 196300
Nashville, TN 37219-6300

Ms. Bridget Conlan
Pacific Legal Foundation
3100 Clarendon Boulevard
Suite 1000
Arlington, VA 22201

Mr. Robert Mark Donnell Jr.
Sims Funk
3102 West End Avenue
Suite 1100
Nashville, TN 37203

Mr. Luke Ellis
Marrs, Ellis & Hodge
805 W. Tenth Street
Suite 400
Austin, TX 78701

Mr. Jonathan Houghton
Pacific Legal Foundation
3100 Clarendon Boulevard
Suite 1000
Arlington, VA 22201

Mr. Zev Kusin
Marrs, Ellis & Hodge
805 W. Tenth Street
Suite 400
Austin, TX 78701

Mr. W. Scott Sims
Sims Funk
3102 West End Avenue
Suite 1100
Nashville, TN 37203

Mr. Peter Gregory Vizcarrondo
Metropolitan Government of Nashville & Davidson County
Department of Law
108 Metropolitan Courthouse
1 Public Square, Suite 108
Nashville, TN 37201-0000

Mr. John Whitaker
The Metropolitan Government of Nashville & Davidson County
Department of Law
P.O. Box 196300
Nashville, TN 37219-6300

Re: Case No. 25-5781
*SW Nashville EB Owner, LLC v. Metro Government of Nashville, et al*
Originating Case No. 3:24-cv-00710

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Kelly L. Stephens, Clerk

Cathryn Lovely
Deputy Clerk

cc: Ms. Vicki R Kinkade

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0230p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

SW NASHVILLE EB OWNER, LLC,
*Plaintiff-Appellant*,

*v*.

METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY; LUCY KEMPF, Executive Director of the Metropolitan Nashville-Davidson County Planning Department,
*Defendants-Appellees*.

No. 25-5781

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:24-cv-00710—Aleta Arthur Trauger, District Judge.

Argued: June 2, 2026

Decided and Filed: August 14, 2026

Before: SILER, NALBANDIAN, and HERMANDORFER, Circuit Judges.

## COUNSEL

**ARGUED:** Jonathan M. Houghton, PACIFIC LEGAL FOUNDATION, Arlington, Virginia, for Appellant. Allison L. Bussell, METROPOLITAN DEPARTMENT OF LAW, Nashville, Tennessee, for Appellees. **ON BRIEF:** Jonathan M. Houghton, Bridget F. Conlan, PACIFIC LEGAL FOUNDATION, Arlington, Virginia, W. Scott Sims, R. Mark Donnell, Jr., SIMS FUNK, PLC, Nashville, Tennessee, Luke J. Ellis, Zev Kusin, MARRS ELLIS & HODGE LLP, Austin, Texas, for Appellant. Allison L. Bussell, Peter G. Vizcarrondo, METROPOLITAN DEPARTMENT OF LAW, Nashville, Tennessee, for Appellees.

---

**OPINION**

---

HERMANDORFER, Circuit Judge. SW Nashville wants to develop an uninhabited parcel that it owns in Nashville's East Bank district. And it has filed a building-permit application that follows all zoning rules. Yet for years now, Nashville's Metropolitan Government (Metro) has refused to process SW Nashville's application in the normal course. Instead, since mid-2022, Metro has maintained a development hold on the property while it evaluates broader infrastructure plans for the area. By barring all development efforts indefinitely, the hold has blocked SW Nashville's right to make valuable use of its land. So SW Nashville sued, asserting that Metro's actions amount to an unconstitutional taking of its property and violate due process. At issue here is whether those claims are ripe for judicial resolution. Because they are, we reverse the district court's contrary dismissal order and remand for further proceedings.

I

In 2022, SW Nashville purchased a "vacant, dilapidated, and uninhabitable building" located at 186 N. 1st St., Nashville, Tennessee. 2nd Am. Compl., R.44, PageID 259 The property is zoned "MUG-A," which allows for multi-family-residential development "by right." Metro Mun. Code § 17.08.030 (2025). Consistent with that zoning, SW Nashville intended to redevelop the property into a "multi-family residential project." 2nd Am. Compl., R.44, PageID 259.

That June, SW Nashville applied for final site-plan approval to build. SW Nashville alleges that its permit application fully complied with Nashville's zoning code, meaning that Metro was required to approve it.

Typically, Nashville's zoning division reviews permit applications. Metro Mun. Code § 17.40.170 (2025). That didn't happen here. Instead, Nashville's planning commission—a separate body from the zoning division, *see* Metro Charter ch. 5, § 11.501 (2023)—stepped in.

The planning commission "put an indefinite 'hold'" on the property "that prohibited review of" SW Nashville's permit application. 2nd Am. Compl., R.44, PageID 260. Metro's hold is not "because of Code noncompliance or even because of anticipated Code changes." *Id.* at PageID 261. Rather, Metro placed the hold because it "may need to acquire right of way interests" from SW Nashville to construct "a planned major roadway." *Id.* at PageID 260.

In a June 29, 2022, email to SW Nashville—correspondence that both sides agree we may consider—Metro confirmed the existence of the hold. Metro explained that it imposed the hold because it was "working in partnership with the Tennessee Department of Transportation (TDOT) to assess possible routes for a planned major roadway in the vicinity of [the] property." *Id.* To let that process play out, Metro told SW Nashville that it "must defer review of building permits" on SW Nashville's property "until the assessment is complete." *Id.* Metro informed SW Nashville that it would "be in contact" regarding "next steps" after it finished the roadway assessment. *Id.* Thus, Metro's hold reflected the planning commission's ongoing work to finalize infrastructure plans in Nashville's East Bank area—not any shortcomings with SW Nashville's building-permit application.

To get its application "moving again," SW Nashville says it undertook "extraordinary efforts to work with Metro and [the] Planning Commission." *Id.* Those efforts "culminated" in a letter to, and meeting with, Metro's chief development officer in the fall of 2023. *Id.* Still, Metro refused to rescind the hold.

Metro's hold has rendered SW Nashville's property "undevelopable and unsellable." *Id.* at PageID 261. As a result, SW Nashville continues to incur "significant carrying costs in connection with the [p]roperty, in the amount of approximately $200,000 per month, exclusive of real property taxes and lost revenue." *Id.* at PageID 259. All told, SW Nashville has incurred "millions of dollars in carrying costs" while the hold has remained in place. *Id.* at PageID 261.

In May 2024, SW Nashville sued Metro and Lucy Kempf, the head of Metro's planning commission, in state court. Relevant here, SW Nashville alleged that Metro's hold and resulting refusal to process SW Nashville's application violated the Takings and Due Process Clauses of the U.S. Constitution, as well as the Takings Clause of the Tennessee Constitution. After

removal to federal court and an amended complaint, Metro and Kempf moved to dismiss. In addressing the relevant takings and due-process claims, the dismissal motions asserted that (1) the claims were untimely; (2) Kempf was entitled to qualified immunity; and (3) the substantive-due-process claims failed on the merits.

The district court dismissed SW Nashville's complaint, but not for the reasons Metro and Kempf had urged. Rather, raising the issue of "jurisdictional" ripeness sua sponte, the district court concluded that SW Nashville's takings and due-process claims were unripe because "there has never been a final decision" on SW Nashville's permit application. MTD Op., R.45, PageID 289, 292. It then dismissed SW Nashville's claims on that basis. After the district court declined to reconsider its dismissal order, SW Nashville timely appealed. We have jurisdiction. *See* 28 U.S.C. § 1291.

II

The Takings Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation. *See* U.S. Const. amend. V; *Chi., Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 236 (1897). What's known as a "regulatory taking" can occur when a land-use rule "restrict[s] a property owner's ability to use his own property." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021). Deprivation of a party's real-property rights, we've noted, may also give rise to "ancillary" federal claims for violations of substantive and procedural due process. *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002).

Whether SW Nashville will prevail on its takings and federal due-process claims is not at issue here. Instead, we confront the district court's threshold dismissal of those claims on ripeness grounds. We review de novo the district court's ripeness decision. *HRT Enters. v. City of Detroit*, 163 F.4th 319, 327 (6th Cir. 2025). In doing so, we accept all well-pled factual allegations as true and construe those allegations in the light most favorable to SW Nashville. *Bozzo v. Nanasy*, 159 F.4th 1111, 1115-16 (6th Cir. 2025).

Applying ripeness principles, we conclude that SW Nashville's claims are ripe for judicial resolution. So we reverse the district court's ripeness-based dismissal. But rather than

address any alternative grounds for affirmance, we remand to allow the district court to consider those arguments in the first instance in light of this opinion.

A

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. Various justiciability principles help police the proper bounds of federal courts' power. Among them is the ripeness doctrine, which is "designed to prevent the courts" from "entangling themselves in abstract disagreements." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732-33 (1998) (cleaned up).

Traditionally, ripeness has been said to "incorporate[] both constitutional and prudential elements." *Carman v. Yellen*, 112 F.4th 386, 400 (6th Cir. 2024) (citation omitted). Constitutional ripeness helps implement Article III's limits by ensuring case-or-controversy prerequisites like proper parties with standing to sue. *See Boone Cnty. Republican Party Exec. Comm. v. Wallace*, 132 F.4th 406, 418 (6th Cir. 2025). Ripeness doctrine's prudential dimension, by contrast, reflects courts' concerns about how and when we may bring the power of the federal judiciary to bear. *See Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003). Those concerns include a recognition that the "premature adjudication of legal questions compels courts to resolve matters, even constitutional matters, that may with time be satisfactorily resolved at the local level." *Miles Christi Religious Ord. v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010) (citation omitted).

Prudential ripeness doctrine has thus been understood to support dismissal of jurisdictionally sound cases for practical reasons. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014). So interpreted, the Supreme Court has observed, prudential ripeness seems "in some tension with" the principle that "a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Id.* (citation omitted).

Because the outcome of this case does not rise and fall with prudential ripeness, we may sidestep open questions about the "continuing vitality of the prudential ripeness doctrine." *Id.*; *see also Kiser v. Reitz*, 765 F.3d 601, 606-07 (6th Cir. 2014). Nor need we delve into whether prudential ripeness—to the extent that it requires a "final decision" on the part of a local

government "regarding [a] developer's proposal" for property-based claims—has a more "settled" role to play in the Takings Clause context. *Knick v. Twp. of Scott*, 588 U.S. 180, 197 (2019). As discussed next, SW Nashville's claims are both constitutionally and prudentially ripe. So neither strand of ripeness doctrine supports dismissal.[1]

1

We start with constitutional ripeness. Clearing that bar requires satisfying "traditional parts" of the Article III standing inquiry: "namely," showing that "a plaintiff is threatened with imminent injury in fact." *Carman*, 112 F.4th at 400 (citation omitted). If that showing is present, the claim is constitutionally ripe. But if a claim instead "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," it is "not ripe for adjudication." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted); *accord Trump v. New York*, 592 U.S. 125, 131 (2020).

As alleged, the factual basis of SW Nashville's claims is straightforward. SW Nashville purchased valuable property. SW Nashville then applied for a permit to develop the property in a way the law expressly permits. But rather than process that permit, Metro imposed an indefinite development hold. That hold froze Metro's consideration of SW Nashville's application. And it barred SW Nashville from building on the property while at the same time rendering the land "worthless" for resale. 2nd Am. Compl., R.44, PageID 261. That dynamic has led to SW Nashville's incurring "millions of dollars in carrying costs" during the wait for Metro's logjam to clear. *Id.* From there, SW Nashville asserts that it has been deprived of the use of its property—and suffered compounding financial harm—without just compensation or due process from Metro.

SW Nashville's claims, then, are "not dependent on contingent future events." *Trump*, 592 U.S. at 131 (citation omitted). To the contrary, Metro's decision to impose the development hold—a hold that in turn precluded SW Nashville's desired development of its property—

---

[1] Consistent with our precedent, the parties accept that SW Nashville's takings claims and "ancillary" due-process claims are subject to the same ripeness test. *See Arnett*, 281 F.3d at 562. So we address both claims together.

occurred years ago. SW Nashville also has no trouble showing that it is "threatened with imminent injury in fact." *Carman*, 112 F.4th at 400 (citation omitted). Indeed, it has *already suffered* a "classic pocketbook injury," in the form of sunk carrying costs, "sufficient to give [it] standing." *Tyler v. Hennepin County*, 598 U.S. 631, 636 (2023). SW Nashville's claims are thus constitutionally ripe.

When dismissing SW Nashville's claims, the district court stated that "jurisdictional ripeness appears to be at issue." MTD Op., R.45, PageID 292. But its analysis focused on whether Metro reached a "final decision" on SW Nashville's application. *Id.* at PageID 288. In the land-use context, however, the finality requirement is a "prudential hurdle[]," not an element of constitutional ripeness. *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 733-34 (1997). We turn to that requirement now.

2

The prudential-ripeness inquiry is twofold. It requires considering (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967); *see Miles Christi*, 629 F.3d at 537. Neither the parties nor the district court put the hardship factor at issue. Rather, all frame prudential ripeness as turning on whether SW Nashville's claims are presently fit for judicial decision. We target our analysis accordingly.

As mentioned, "land-use cases" come with their own distinct rule for addressing ripeness. *Cath. Healthcare Int'l, Inc. v. Genoa Charter Twp.*, 82 F.4th 442, 448 (6th Cir. 2023). In the land-use context, "the necessary event is simply that the government has adopted a definitive position as to how the regulations at issue apply to the particular land in question." *Id.* (citation omitted). Courts refer to the need for a definitive land-use decision as the "finality requirement." *Pakdel v. City & County of San Francisco*, 594 U.S. 474, 478 (2021).

That finality requirement sets a "relatively modest" hurdle: "[A] federal court should not consider the claim before the government has reached a final decision" about the relevant property. *Id.* at 475, 478 (citation omitted). Only "*de facto* finality is necessary," meaning a claim may proceed "[o]nce the government is committed to a position." *Id.* at 479. So "[a]ll a

plaintiff must show is that there is no question about how the regulations at issue apply to the particular land in question." *Id.* at 478 (cleaned up). Enforcing that rule ensures that "a court knows the extent of permitted development on the land in question" before determining whether a compensable taking has occurred. *Palazzolo v. Rhode Island*, 533 U.S. 606, 618 (2001) (citation omitted). After all, to determine if a government's regulation of property "has gone too far, the court must first know how far the regulation goes." *Pakdel*, 594 U.S. at 479 (cleaned up).

It's worth pausing here to note the difference between finality—which is required in land-use cases—and exhaustion of local remedies—which is not. At bottom, finality asks *whether* a definitive decision has been made: It requires "the government entity charged with implementing the regulations" to have "reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). By contrast, exhaustion requires a party to do more *even though* the relevant actor has made its decision—typically, by properly pursuing local administrative or judicial avenues for relief from the decision prior to filing suit. *See Pakdel*, 594 U.S. at 479-80; *see also Knick*, 588 U.S. at 187-88.

Practically speaking, finality and exhaustion "sometimes overlap." *Grace Comm. Church v. Lenox Twp.*, 544 F.3d 609, 614 (6th Cir. 2008). That's because a property owner's "failure to properly pursue administrative procedures" when "avenues still remain for the government to clarify or change its decision" might mean there was no final decision in the first place. *Pakdel*, 594 U.S. at 480. Applying that rule to local zoning-review schemes, we've held, for example, that "a zoning determination cannot be deemed final until the plaintiffs have applied for, and been denied, a variance." *Seguin v. City of Sterling Heights*, 968 F.2d 584, 587 (6th Cir. 1992). But once the relevant land-use authority comes to a definitive decision about a property owner's rights, finality is met; the owner need not pursue further local remedies to achieve ripeness. *See, e.g.*, *Cath. Healthcare Int'l, Inc.*, 82 F.4th at 448.

Applying the finality framework, we conclude that Metro's development hold on SW Nashville's property is sufficiently final for ripeness purposes.

Start with the definitiveness of Metro's decision about permitted property uses. In June 2022, Metro "committed to a position" on SW Nashville's permit application. *Pakdel*, 594 U.S. at 479. That decision was to block SW Nashville from "undertaking *any* construction or development" by "prohibit[ing] review" of SW Nashville's application indefinitely. 2nd Am. Compl., R.44, PageID 260, 263 (emphasis added). Metro's actions therefore left "no question about the city's position": SW Nashville cannot pursue any development. *Pakdel*, 594 U.S. at 478. And Metro has adhered to that "definitive" decision ever since. *Cath. Healthcare Int'l, Inc.*, 82 F.4th at 448.

Nor does SW Nashville have further "avenues" through which Metro might "clarify or change its decision." *Pakdel*, 594 U.S. at 480. Metro does not dispute that its planning commission issued the hold decision outside the "Code-mandated permitting process." 2nd Am. Compl., R.44, PageID 260. And it acknowledges that there is "no action" short of litigation that SW Nashville can "take to resolve the issue." Metro Br. 13. When it comes to SW Nashville's development rights, Metro thus accepts that its hold decision was dispositive and not a stepping-stone to some other, final decision-maker.

The scope of SW Nashville's permitted use is also sufficiently "concrete." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 807. As a result of Metro's blanket development hold, SW Nashville's "permissible uses of the property are known to a reasonable degree of certainty." *Palazzolo*, 533 U.S. at 620. SW Nashville is prohibited "from undertaking any construction or development of any kind." 2nd Am. Compl., R.44, PageID 263. That is so even though the relevant zoning rules permit multi-family development "by right." *Id.* at PageID 259. The blanket nature of the hold thus makes clear "how far the regulation goes." *Pakdel*, 594 U.S. at 479 (citation omitted).

The upshot: SW Nashville has shown Metro's commitment to a decision that bars SW Nashville from developing its property. And SW Nashville now seeks to challenge that decision. "[N]othing more" is required for "*de facto* finality." *Id.* Because there is "no question" that Metro's "definitive position on the issue has inflicted an actual, concrete injury" on SW Nashville, SW Nashville's claims are prudentially ripe. *Id.* at 478 (cleaned up).

3

Initially, Metro and Kempf disputed ripeness in their briefing. But by the time of oral argument, that opposition dissolved: Metro and Kempf's counsel expressed agreement with SW Nashville that "a decision was made about this property" in June 2022 when Metro placed "a hold on their development." Oral Argument Audio, 15:39-15:54. Metro's counsel also conceded that the hold decision satisfies the finality requirement. *Id.* at 26:34-27:03.

That leaves the district court's no-ripeness rationale. The district court started from the premise that "there has never been a final decision" on SW Nashville's permit application. MTD Op., R.45, PageID 289. That was so, the district court reasoned, because Metro had not formally granted or denied the application. As a result, all that was at issue in the district court's view was Metro's course in "continu[ing] not to act." *Id.* (emphasis omitted).

Having focused the analysis on Metro's still-pending permit review, the district court saw ripeness as turning on whether SW Nashville fell within the extraordinary-delay "exception" to the finality requirement. *Id.* at PageID 285. That is, the district court accepted that SW Nashville's claims might be ripe, even without a final decision on its application, if Metro's "delay in review of" the application was "unreasonable" or "extraordinary." *Id.* at PageID 290. But because the district court concluded that Metro's review delay was reasonable, it deemed SW Nashville's claims unripe as a "jurisdictional" matter. *Id.* at PageID 292.

We can understand where the district court was coming from. There are times when local authorities' use of "unreasonable, duplicative, or unjust" procedures show that the government has already "dug in its heels" on a land-use application—which in turn triggers finality because any further application efforts "would be futile." *Sherman v. Town of Chester*, 752 F.3d 554, 561, 563 (2d Cir. 2014). So too, a government's delay in addressing a development application can be relevant to the merits question of "whether a taking occurred." *Richmond Rd. Partners, LLC v. City of Warrensville Heights*, 2025 WL 737342, at *3 (6th Cir. Mar. 7, 2025) (collecting cases); *see also Rubicon Real Est. Holdings, LLC v. City of Pontiac*, 179 F.4th 431, 448 (6th Cir. 2026) ("[F]or governmental delay to amount to a taking, the lag must be extraordinary." (citation omitted)). Specifically, under the current regulatory-takings framework, lengthy land-use-review

delay might show a government's unreasonable interference with a property owner's "investment-backed expectations" or "property values." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 336-38 (2002) (citation omitted).

Here, though, SW Nashville did not rest its challenge on Metro's delay in reviewing its application as part of the zoning process. To the contrary, SW Nashville alleged that its permit application "ha[d] not been held up because of Code noncompliance or even because of anticipated Code changes." 2nd Am. Compl., R.44, PageID 261. Instead, SW Nashville challenges Metro's independent decision, made through the planning commission, to entirely "prohibit[] review" of SW Nashville's permit application by imposing a development hold. *Id.* at PageID 260. That hold was made outside of "the Code-mandated permitting process" and required "defer[ring] review of building permits" for the "indefinite" future. *Id.* at PageID 260-61. So the zoning division's substantive review of the permit application is beside the point at present.

Meanwhile, SW Nashville has no means to alter Metro's no-development decision. And that decision, SW Nashville asserts, has rendered its property "undevelopable and unsellable." *Id.* at PageID 261. Metro's affirmative choice to freeze any development of SW Nashville's parcel was thus a property-use decision made, not a decision delayed. That is all prudential ripeness requires.

To be sure, SW Nashville's suit may present merits complexities down the line—including about the precise nature of SW Nashville's takings theory. And, as mentioned, the district court's assessment of the reasonableness of Metro's review delay may again prove relevant should it address whether SW Nashville prevails on its claims. But courts should take care not to "use the ripeness doctrine as an opportunity to prematurely reach thorny merits questions." *Barber v. Charter Twp. of Springfield*, 31 F.4th 382, 389 n.4 (6th Cir. 2022). So we wade no further than the conclusion that Metro's mid-2022 hold decision was a final decision about SW Nashville's property use. SW Nashville's claims are therefore ripe for judicial resolution.

B

Metro and Kempf nonetheless urge us to affirm on alternative grounds. Specifically, they contend that SW Nashville's claims are barred by the statute of limitations and that Kempf is entitled to qualified immunity.

We decline to address those issues in the first instance. Because of its ripeness holding, the district court never ruled on central statute-of-limitations issues. Nor did it address qualified immunity. We "generally" decline to "consider an issue not passed on below." *Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 857 (6th Cir. 2024) (citation omitted). Rather, our "customary practice" is to remand for the district court to address the issue. *United States v. Houston*, 792 F.3d 663, 669 (6th Cir. 2015). We adhere to that general practice here and leave the parties' statute-of-limitations and qualified-immunity arguments for consideration on remand.

* * *

We reverse the district court's order dismissing SW Nashville's claims on ripeness grounds and remand for further proceedings.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 25-5781

SW NASHVILLE EB OWNER, LLC,

Plaintiff - Appellant,

v.

METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY; LUCY KEMPF, Executive Director of the Metropolitan Nashville-Davidson County Planning Department,

Defendants - Appellees.

**FILED**
Aug 14, 2026
KELLY L. STEPHENS, Clerk

Before: SILER, NALBANDIAN, and HERMANDORFER, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's order of dismissal is REVERSED, and the case is REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk